IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GLEN R. JEFFERY, JR.,

                    Plaintiff,

  v.

ETHAN MARCZEWSKI, ANTHONY JOHNSON,
STEVEN FAHRENKRUG, FAITH KRESSER, LORI
LAPLUME, and PAUL FOSSHAGE (in his capacity as
the executor of Nathan Fosshage's estate),

                    Defendant.

OPINION and ORDER

23-cv-848-jdp

---

Plaintiff Glen R. Jeffery, Jr. is proceeding on Eighth Amendment claims against staff at Columbia Correctional Institution (CCI) based on aggressive handcuffing, unlawful restraint, improper decontamination following exposure to OC spray, denial of medical care, and sexual harassment. Dkt. 7. The state defendants (Ethan Marczewski, Anthony Johnson, and Paul Fosshage), and the medical defendants (Steven Fahrenkrug, Faith Kresser, and Lori Laplume), separately moved for summary judgment for failure to exhaust administrative remedies under the Prison Litigation Reform Act. Dkt. 36 and Dkt. 40.

I held an evidentiary hearing to determine whether Jeffery fabricated two documents relevant to the issue of exhaustion. For reasons explained in this order, I find that Jeffery fabricated the documents to attempt to show that he exhausted one of his claims. I will dismiss the case with prejudice as a sanction for Jeffery's dishonesty. Because Jeffery submitted two more fabricated documents after the evidentiary hearing to support his defense, I will also dismiss Jeffery's other civil rights cases pending in this court and impose a filing bar.

BACKGROUND

In their exhaustion motions, defendants contend that all of Jeffery's claims are unexhausted, but only one claim is relevant to the fabrication issue. Jeffery proceeds against Kasser and Laplume based on the allegation that, on February 25, 2023, they unnecessarily and gratuitously exposed Jeffery's penis to other prisoners to humiliate him. Dkt. 7 at 8.

Jeffery disputes that this claim is unexhausted. He says that to exhaust it, he submitted a DOC-643 interview/information request form and a related DOC-400 inmate complaint form to CCI's former warden, Larry Fuchs, on March 12, 2023. *See* Dkt. 58 at 3–4, 11–12. Jeffery explains that he sent those forms to Fuchs directly because he was complaining about sexual harassment and didn't trust two institution complaint examiners. *See* Dkt. 59 ¶ 4; Dkt. 58-1 at 2; Dkt. 58-2; *see also* Wis Admin. Code DOC § 310.08 (administrative procedures governing Prison Rape Elimination Act [PREA] complaints). Jeffery says that Fuchs didn't respond to the documents at issue. Dkt. 58 at 12. Jeffery submits purported copies of these documents that he says he made with carbon paper. *Id.* at 3; Dkt. 58-1; Dkt. 58-2.

The state defendants dispute the authenticity of the documents at issue. Dkt. 65 at 5. They say that "the lack of any record of the complaint suggests that it was not submitted as Jeffery claims." *Id.* (citing Dkt. 62). Similarly, the medical defendants "question the highly suspect nature of this purported 'PREA complaint.'" Dkt. 67 at 7. I held an evidentiary hearing on the issue of fabrication on July 29, 2025.

HEARING TESTIMONY AND EVIDENCE

Attorneys Jonathan Davies and Stephanie Rubsam from the State Department of Justice appeared for defendants, and attorney John Reid appeared for the medical defendants.

2

Counsel for the state defendants called Department of Corrections employees Kristy Szelagowski, Rebecca Keeran, and Travis Plath, all of whom Jeffery cross-examined. Jeffery gave his own testimony. All the witnesses, other than Jeffery himself, appeared by videoconference. Davies and Jeffery each made argument at the close of testimony, and Reid made brief argument.

A. **The state defendants' case**

   1. **Szelagowski's testimony**

   Szelagowski gave the following testimony:

   In March 2023, when Jeffery says he submitted the documents at issue, Szelagowski worked at CCI as the deputy warden's secretary. One of her duties was to collect, review, and respond to correspondence for the deputy warden and the warden if his secretary was out of the office. If prisoners wanted to correspond with the warden or deputy warden, they could place written interview/information request forms in mailboxes in their units. Staff would collect, sort, and deliver those requests to mailboxes, and the warden's secretary, deputy warden's secretary, or security director's secretary would retrieve them. One of the secretaries would then date-stamp, review, and route the requests to the warden, deputy warden, or security director. After the warden, deputy warden, or security director responded to the request, that official would return the request to the secretary, who would then scan the answered request into the Correspondence Tracking Database (CTD). After scanning, the answered request was returned to the prisoner. By comparison, if the warden or deputy warden assigned the request to another staff member to investigate and answer, the secretaries would scan the request without a response and note in the CTD that it was assigned to another staff member. Szelagowski searched the CTD for the request at issue and did not find it.

If correspondence sent to the warden's office was determined to be an inmate complaint, or if a request was submitted with an inmate complaint, the secretaries would not scan that correspondence into the CTD. Rather, they would walk the correspondence to the institution complaint examiner's office. Szelagowski does not recall walking the documents at issue to that office. Szelagowski conceded that prisoner correspondence has been lost on occasion.

2. **Keeran's testimony**

Keeran gave the following testimony:

Keeran has worked as the litigation coordinator at CCI since August 2023. Any request that Jeffery submitted while incarcerated at CCI from November 2022 to August 2023 would be recorded in the CTD. A search of the CTD for that period produced 107 requests and other correspondence submitted by Jeffery, including dated and answered interview/information requests submitted to the warden and security director. *See* Dkt. 94-4; Dkt. 93-5; Dkt. 93-6; Dkt. 93-7; Dkt. 93-8.

3. **Plath's testimony**

Plath gave the following testimony:

Plath is the current institution complaint examiner at CCI, a position he's held for about a year and a half. When inmate complaints are sent directly to the warden, the warden's secretaries typically deliver them to Plath by hand. All inmate complaints are date-stamped and scanned into the Inmate Complaint Review System (ICRS) to become part of the prisoner's inmate complaint history report. Plath did not find the inmate complaint or request form at issue in ICRS or Plath's physical files. Plath's physical files included correspondence related to some of the inmate complaints filed from 2023 to 2025.

If an inmate complaint alleges a violation of PREA, Plath forwards it to the PREA compliance managers, who then address it. After that review, the inmate complaint is scanned into ICRS within ten days.

## B. Jeffery's case

Jeffery gave the following testimony:

Jeffery submitted the request and inmate complaint at issue by folding them together and putting them outside his cell door. Jeffery never got an acknowledgment of receipt. Jeffery wasn't concerned about the lack of acknowledgement because he raised a PREA complaint and PREA investigations could take months.

Jeffery made copies of those documents with carbon paper. Jeffery noted that he carbon-copied the request form because some of his documents had gone missing at CCI. Jeffery always has "spare documents" to ensure that he has copies of his correspondence. But Jeffery does not always note on his documents that he's made carbon copies of them. Whether Jeffery makes that notation depends on how sensitive the document is and whether he needs to use it in litigation. Jeffery has other requests with notations that they were carbon-copied in his cell.

## POSTHEARING EVIDENCE

Based on his testimony, I invited Jeffery at the hearing to submit other requests with the notation of carbon copied. After the hearing, Jeffery submitted two interview/information request forms dated June 2 and June 6, 2025. Dkt. 96-1. The first is addressed to the property and mailroom sergeant and the second the Restrictive Housing Unit (RHU) manager. Neither

5

request contains a date stamp, response, or any other indication that it was received or processed.

FINDINGS OF FACT AND ANALYSIS

A district court has the inherent power to sanction a party for abuse of the judicial process. *Fuery v. City of Chicago*, 900 F.3d 450, 463 (7th Cir. 2018). Dismissal of a case is an appropriate sanction for a party's submission of false documents. *Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 401 (7th Cir. 2015); *see also Ayoubi v. Dart*, 640 F. App'x 524, 528–29 (7th Cir. 2016) ("[D]ismissal with prejudice is an appropriate sanction for lying to the court in order to receive a benefit from it, because no one needs to be warned not to lie to the judiciary.").

Based on the testimony and evidence presented at the hearing, and my review of the record, I find that Jeffery fabricated the documents at issue to support his argument that he exhausted his sexual harassment claim against Kasser and Laplume.

The testimony of the state's witnesses, together with the documentary evidence, supports a finding that CCI had reliable systems for collecting, answering, and preserving interview/information requests and inmate complaints addressed to the warden. Szelagowski's testimony that the secretaries would date-stamp requests and scan them into the CTD after they received a response was corroborated by Keeran's testimony and the exhibits that Keeran discussed. Szelagowski did not find the request at issue in the CTD.

Admittedly, the request is different because Jeffery says that he submitted it with an inmate complaint. But Szelagowski testified that the secretaries walked inmate complaints and related correspondence addressed to the warden to the institution complaint examiner's office, and Plath corroborated that testimony. Plath also testified that all inmate complaints, including

those sent directly to the warden, are date-stamped and scanned into ICRS. This testimony was corroborated by Jeffery's inmate complaint history report, which shows that he filed 27 inmate complaints while incarcerated at CCI from November 28, 2022, to August 1, 2023. Dkt. 93-2 at 7–8. In addition, Plath testified that he did not find the inmate complaint or request form at issue in ICRS or in his physical files.

I acknowledge, consistent with Szelagowski's testimony, that it's at least conceivable that a request form or inmate complaint could get lost and fail to reach its intended recipient. But I find that did not happen here for six additional reasons.

First, Jeffery submitted five inmate complaints that were preserved in ICRS in March 2023. Dkt. 93-2 at 7. It seems unlikely that the inmate complaint at issue would get lost even though the other complaints that Jeffery submitted around that time were received. Two of those complaints were received within two days of March 12, 2023, the date on which Jeffery says that he submitted the documents at issue.

Second, Jeffery submitted requests to the security director, Ryan Blount, and Fuchs on March 13, 2023, both of which were date-stamped and answered in a day. Dkt. 93-6 and Dkt. 93-7. Neither request contained any notation that it was carbon-copied. Jeffery testified that he makes that notation depending on how sensitive the document is and whether he needs to use it in litigation. But Jeffery threatens litigation in both requests, so there's reason to think that these would be the type of sensitive documents that would have prompted Jeffrey to make that notation on them. Dkt. 93-6 at 1; Dkt. 93-7 at 1.

Third, Jeffery admitted during his testimony that he did not follow up on the documents at issue even though they went unanswered. But Jeffery, like some other plaintiffs in this court, is a "highly experienced pro se litigator who is not shy about speaking up to prison officials."

7

*See Winston v. Goff*, 23-cv-264-jdp, Dkt. 81 at 6. Therefore, if these requests had actually been submitted and ignored, it seems likely that Jeffery would have filed an inmate complaint, or at least another request, complaining about the lack of a response. *See id.* at 6–7. Jeffery testified that he didn't take that step because he knew that PREA investigations could take months, but Jeffery waited much longer than that in this case. Jeffery says that he submitted the documents at issue on March 12, 2023, over two years ago. It's implausible that an outspoken, experienced litigator would wait that long without mentioning the absence of even an acknowledgement that the complaint was being investigated or processed.

Fourth, Jeffery was housed in the RHU at CCI on March 12, 2023. *See* Dkt. 93-6 at 1; Dkt. 93-7 at 1. Two and a half months later, Jeffery submitted a request in which he asked Fuchs to remove a ban on carbon paper that "CPS Glass" had imposed. Dkt. 93-8 at 1. This evidence is not decisive by itself, but it raises questions about whether Jeffery had carbon paper on March 12, 2023, especially in view of the other evidence of fabrication. *Cf. Al-Adahi v. Obama*, 613 F.3d 1102, 1105 (D.C. Cir. 2010) ("Those who do not take into account conditional probability . . . . [m]ay think that if a particular fact does not itself prove the ultimate proposition . . . , the fact may be tossed aside and the next fact may be evaluated as if the first did not exist.").

Fifth, the inmate complaint at issue contains inconsistent dates. In the space for "date of incident," Jeffery wrote "2-25-2023." Dkt. 93-1 at 3. But in details section, Jeffery wrote: "On 2 25 *2024*[,] I was . . . being returned to the cell from being seen by . . . LaPlume & Faith." *Id.* (emphasis added). As I have found in other cases presenting fabrication issues, "I find it unlikely that [Jeffery] would have mistakenly written a future year." *See Smith v. Peters*,

8

23-cv-191-jdp, Dkt. 86 at 8. "When people miswrite the year, they typically write the previous year, not a future one." *Id.*; *see also Winston v. Kolbo*, 23-cv-9-jdp, Dkt. 110 at 3–4.

Sixth, Jeffery has been found guilty of lying in at least four prison disciplinary hearings. *Jeffery v. Zenk*, 23-cv-641-jdp, Dkt. 138 at 4. The first two conduct reports were issued in January and August 2021. That is close enough to the date on which Jeffery says he submitted the documents at issue, March 12, 2023, to make them relevant to Jeffrey's truthfulness. *See id.* The other two conduct reports were issued in October and November 2023, also contributing to Jeffery's "pattern of dishonesty." *See id.*

I also find that Jeffery faked the carbon-copied requests that he submitted after the hearing. Dkt. 96-1. I base this finding on three primary considerations.

First, Jeffery did not present these new requests as evidence until after the hearing even though he says that he submitted them to prison officials in early June 2025. Because Jeffery is an experienced litigator who knows how to present evidence to support his arguments, it seems most likely that he would have submitted the new documents as exhibits before the hearing. Jeffery's exhibits were not due until July 21, 2025, so he faced no bar to their earlier submission.

Second, neither request contains any indication that it was received or processed, which is the same pattern of fabrication at issue in this case. If Jeffery had submitted the new requests to lower-level prison staff, the requests might not have been entered into the CTD. But there's good reason to think that he would have received a response. Prisoners regularly file *answered* interview/information request forms in cases in this court from prison staff other than the warden, deputy warden, or security director. In another case, I have found that a prisoner fabricated interview/information requests containing no indication that they were received or

9

processed based in part on the prison chaplain's testimony that his standard practice was to answer and return those request to prisoners. *See Goff*, 23-cv-264-jdp, Dkt. 81 at 6. As I've noted before, one piece of prison correspondence might go missing, but multiple pieces of lost correspondence looks suspicious. Here, Jeffery has not been able to produce even one piece of "carbon copied" correspondence that bears evidence of having been received.

Third, I have found that Jeffery fabricated other documents in this case, and he has been found guilty of lying in at least four prison disciplinary hearings. These findings of dishonesty, when viewed with the new requests' other indicia of irregularity, show that the new requests are fake.

SANCTIONS

A prisoner who, like Jeffery, proceeds without prepaying the filing fee faces few impediments to the filing of a lawsuit, and he can compel the opposing parties and the court to expend vast resources based on bare allegations. In exchange for virtually free access to the courts, I expect all litigants to be scrupulously honest in their statements to the court. Jeffery's submission of fabricated documents is grave insult to the integrity of the court and the judicial process.

I will dismiss this case with prejudice as a sanction for Jeffery's fabrication of the initial request and related inmate complaint. But dismissal of this case would have been inevitable if Jeffery hadn't submitted the falsified documents, so dismissal of this case does not provide any real deterrence to future dishonesty. More severe sanctions are warranted, especially since Jeffery compounded his dishonesty with falsified post-hearing evidence.

A financial sanction would be ineffective because Jeffery proceeds without prepaying the filing fee. *Rivera v. Drake*, 767 F.3d 685, 687 (7th Cir. 2014). Excluding evidence, imposing a strike under 28 U.S.C. § 1915(g), or dismissing only this case wouldn't deter Jeffery based on his willingness to take the chance to use dishonesty to preserve a fatally flawed suit. There is a heightened need here "not only to reprimand [Jeffery], but also to deter future parties from trampling upon the integrity of the court." *See Dotson v. Bravo*, 321 F.3d 663, 668 (7th Cir. 2003).

The only effective sanction now is to fully bar Jeffery from litigating civil rights lawsuits for a period of time. To that end, I will dismiss Jeffery's other pending cases in this court: *Jeffery v. Houg*, 23-cv-847-jdp; *Jeffery v. Schlachter*, 24-cv-309-jdp; *Jeffery v. Sukowaty*, 25-cv-174-jdp; and *Jeffery v. Waterman*, 25-cv-175-jdp. And I will issue a filing bar that does not include an imminent-danger exception for civil suits. *See Lindsey v. Hoem*, 799 F. App'x 410, 413 (7th Cir. 2020) (citing *Support Sys. Int't, Inc. v. Mack*, 45 F.3d 185, 186 (7th Cir. 1995), as authorizing such a filing bar). Accordingly, the only cases that Jeffery may file in this court are habeas corpus petitions relating to his criminal convictions. Any civil lawsuit that Jeffery files will be docketed and summarily dismissed. After two years, Jeffery may file a motion asking me to lift or modify this filing bar.

ORDER

IT IS ORDERED that:

1. This case is DISMISSED with prejudice as a sanction for plaintiff Glen R. Jeffery, Jr.'s dishonesty.

2. All of plaintiff's other cases currently pending in this court, 23-cv-847-jdp, 24-cv-309-jdp and 25-cv-174-jdp, and 25-cv-175-jdp are DISMISSED with

11

prejudice for reasons explained in this order, which is to be docketed in each of those cases.

3. All pending motions in this and the '847, '309, '174, and '175 cases are DENIED as moot.

Entered September 18, 2025.

                              BY THE COURT:

                              /s/

                              _____
                              JAMES D. PETERSON
                              District Judge